IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMERICAN TRUST & SAVINGS BANK,               OPINION AND
                                                                           ORDER
                     Plaintiff,

                                                                                09-cv-474-bbc
       v.

PHILADELPHIA INDEMNITY INSURANCE COMPANY,
BREMSER, SCHOMMER & MCHUGH, CPA'S, LLC and
BREMSER GROUP, INC.,

                     Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

       In this action for monetary relief, plaintiff American Trust & Savings Bank asserts seven claims against defendants Philadelphia Indemnity Insurance Company, Bremser, Schommer & McHugh CPA's, LLC and Bremser Group, Inc. relating to the performance of their accounting functions for Shullsburg Creamery. Before the court is defendants' motion to dismiss plaintiff's claims for "strict responsibility" misrepresentation and breach of fiduciary duty.

       Before turning to the merits of defendants' motion, another matter deserves attention. On November 25, 2009, Magistrate Judge Crocker asked plaintiff to provide verification of the diversity of citizenship between itself and defendants. Plaintiff has

1

responded. Dkt. #20, 21. Plaintiff alleges that defendant Bremser, Schommer, & McHugh, CPA's, LLC is a former Wisconsin limited liability company that was dissolved in 2003. The members of the LLC included Frank Bremser, James Schommer, Michael McHugh, Thomas Stitgen and Kevin Fischer. These members are all citizens of Wisconsin. Defendant Bremser Group, Inc. is a Wisconsin corporation with its principal place of business in Wisconsin. Defendant Philadelphia Indemnity Insurance Company is a Pennsylvania insurance company with its principal place of business in Pennsylvania. Plaintiff is an Iowa corporation with its principal place of business in Iowa. Also, plaintiff alleges that there is more than $75,000 in controversy. After reviewing plaintiff's submissions, I conclude that diversity jurisdiction exists in this case.

With respect to the merits of defendants' motion to dismiss, I conclude that plaintiff has failed to state a claim for strict responsibility misrepresentation and will dismiss this claim. However, it remains unclear whether the statute of limitations bars plaintiff's fiduciary duty claim. Plaintiff contends that it could not have known earlier that it had such a claim, but defendants allege in their reply brief that plaintiff filed an identical claim two years ago in state court. Because plaintiff has not had an opportunity to respond to the points made in defendants' reply brief, I will give plaintiff an opportunity to file a sur-reply to provide more information to the court regarding the state court claims.

For the sole purpose of deciding this motion, I find that plaintiff has fairly alleged the

2

following facts.

## FACTS

Non-party Shullsburg Creamery, Inc. is a Wisconsin company specializing in the manufacturing and sale of cheese products. In 1986, plaintiff American Trust established a lending arrangement with the Creamery.

From 2002 until October 2003, defendant Bremser, Schommer & McHugh, CPA's, LLC was an accounting firm that provided accounting services to the Creamery. In 2003, the principals of the LLC dissolved the LLC and incorporated a successor entity, defendant Bremser Group, Inc. From the time of its inception in 2003, defendant Bremser Group provided accounting services to the Creamery. (For convenience, I will refer to defendant Bremser, Schommer & McHugh LLC and defendant Bremser Group collectively as defendant Bremser.)

Defendant Bremser provided a variety of services to the Creamery, including preparation of state and federal tax returns, bank reconciliations, trial balances and other internal accounting records. In addition to accounting and tax services, Bremser provided human resources advice, internal controls, fiscal planning, information technology and financial analysis services. The Creamery gave Bremser full access to its financial records and accounting personnel. Between November 2002 and December 2005, the Creamery paid

3

Bremser approximately $190,000 for its services.

Bremser was required to review all of the Creamery's loan documentation and familiarize itself with the Creamery's loan covenants. Under the loan covenants between plaintiff American Trust and the Creamery, the Creamery was required to have a general ledger or a system of double-entry accrual accounting. However, until May 2005, the Creamery had a manual and primarily cash-based internal accounting system and did not have a system of double-entry accrual accounting. Bremser never told the Creamery that its account system violated loan covenants and never disclosed the loan violations as part of any review or audit.

The Creamery's loan covenants required it to maintain an accounting system and financial statements that were compliant with "generally accepted accounting principles." Beginning with the 2002 fiscal year, the Creamery hired Bremser to perform an independent review of its balance sheets, statements of income, retained earnings and cash flows. The review was to be conducted in accordance with "statements on standards for accounting and review services" issued by the American Institute of Certified Public Accountants. Bremser agreed to disclose any material errors, fraud or illegal acts that came to the accountants' attention during the course of its professional review and audits.

During the course of its review for the fiscal year 2002, Bremser concluded that the Creamery's inventory valuation system was not compliant with generally accepted

4

accounting principles, but did not tell the Creamery that the system was non-compliant. Instead, Bremser attested that the valuation system was compliant.

In February 2003, the Creamery's management discovered that 550,000 pounds of cheese inventory had not been accounted for in the company's financial records. The inventory was impaired and could not be sold at market value. There was a "write-down" of inventory in the amount of $508,000. Bremser accounted for the write-down by back-dating the write-down to the fiscal year 2002.

After the write-down, Bremser concluded that the Creamery's income statement from the fiscal year 2002 was out of balance by approximately $750,000. Bremser created accounting entries to offset the write-down. In particular, Bremser inserted a "plug" of $600,000 into the "costs of goods sold account" on the Creamery's 2002 financial statements. The $600,000 plug accounted for approximately 300% of the Creamery's net profits for the 2002 fiscal year, and inflated the Creamery's income, capital and operating assets for the 2002 fiscal year. Bremser did not tell the Creamery about the plug.

The Creamery used financial statements from the fiscal year 2002 to renew its line of credit with plaintiff and procure $2 million in additional debt to finance an expansion of its operations.

On April 5, 2004, Bremser issued reviewed financial statements for the 2002 and 2003 fiscal years. The financial statements indicated that the Creamery had more than

5

$28.5 million in sales revenue for fiscal year 2003 and profit margins on par or exceeding industry standards for both reported fiscal years. In conducting the 2003 review, Bremser adjusted a product subaccount to the "costs of goods sold account" by "plugging" $100,000 in the account. Bremser did not tell the Creamery about the plug.

In 2004, the Creamery asked Bremser to prepare a comprehensive projection of the Creamery's finances for the following three years, taking into account substantial new debt that it would incur to finance expansion of its operations. According to Bremser's projections, after assuming $5.15 million in new debt, the Creamery would end the 2005 fiscal year with pre-tax income of $322,416 and equity of $3.3 million.

In September 2004, the Creamery borrowed an additional $5 million dollars to construct a new cheese factory and expand its warehouse and distribution center. In October 2004, plaintiff instituted several new restrictive covenants in its loan agreements with the Creamery because of the substantial new debt. These covenants included monthly financial statements and a full audit for the fiscal year 2004, restrictions on capital expenditures, working capital, dividend distributions, debt service ratios and personal investment and guarantees from Scott Stocker, the Creamery's president, CEO and primary shareholder.

In March 2005, the Creamery hired a new internal accountant, Carolyn Kuhle, to implement a general ledger system and prepare internal financial statements that would be audited by Bremser. Kuhle discovered that the Creamery's financials were not compliant

6

with generally accepted accounting principles and that a number of accounts had been manipulated to make the financial statements appear balanced. The manipulations were not reflective of real transactions and had not been disclosed to the Creamery. Also, Kuhle determined that the Creamery had incurred a net loss of approximately $1.4 million during the fiscal year 2004. When Kuhle took this information to Bremser accountants, they insisted that her accounting was incorrect. Subsequently, Bremser altered the financial records.

In April 2005, Bremser told the Creamery that it could improve its reported financial position for the fiscal year 2004 by selling its trucking fleet to a newly-created related entity. The fleet was collateral for the Creamery's loans with plaintiff and the loan agreements prohibited selling collateral. The Creamery agreed to sell the fleet. Bremser recorded the sale, transfer of property and receipt of approximately $200,000 on the Creamery's books and backdated the transaction date to December 31, 2004. The trucks were never transferred to a new entity.

Also in 2005, Bremser decreased the Creamery's reported loss for 2004 by capitalizing prepaid expenses in the amount of $124,748 related to a contract between the Creamery and the Green Bay Packers. After Bremser altered the Creamery's financial records, the financial statements showed a loss of approximately $26,000, instead of $1.4 million. Bremser issued the audited financial statements around May 2005.

By June 2005, the Creamery discovered that there were overdrafts on its operating accounts and nearly 90% of its working capital had evaporated between 2003 and 2004. It attempted to continue operations by liquidating inventory, cutting overhead and obtaining additional financing from plaintiff, but by December 2005, the company was insolvent. It entered voluntary receivership on December 31, 2005.

The Circuit Court for Lafayette County, Wisconsin, appointed Michael S. Polsky as receiver for the Creamery and related entities. During the receivership, the Creamery's assets were sold and the proceeds were distributed to its creditors, including plaintiff. However, proceeds from the sale of assets were insufficient to repay the Creamery's debt obligations, and plaintiff received only partial repayment of the money owed to it.

On March 27, 2009, the receiver and plaintiff entered into an assignment of claims agreement. Under the agreement, the receiver transferred and assigned to plaintiff all rights, title and interests in any and all claims the receiver or receivership entities may have against third parties. The Creamery and the receiver retained no interest in the claims and have no right of recovery from the claims. The assignment was ratified by the circuit court and became effective on April 8, 2009. Plaintiff brings this action against defendants in its capacity as assignee of rights and claims from the Creamery.

OPINION

Plaintiff asserts seven legal theories against defendants: (1) professional malpractice; (2) negligent misrepresentation; (3) strict responsibility misrepresentation; (4) intentional misrepresentation; (5) breach of fiduciary duty; (6) breach of contract; and (7) unjust enrichment.  Defendants have moved to dismiss only plaintiff's claims of strict responsibility misrepresentation and breach of fiduciary duty.  The parties do not deny that Wisconsin law governs plaintiff's claims.  RLI Insurance Co. v. Conesco, Inc., 543 F.3d 384, 390 (7th Cir. 2008) ("When neither party raises a conflict of law issue in a diversity case, the applicable law is that of the state in which the federal court sits.")

A claim should be dismissed under Fed. R. Civ. P. 12(b)(6) when the allegations in a complaint, however true, could not raise a claim of entitlement to relief.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 558 (2007).  The court will construe all of plaintiff's factual allegations as true and draw all reasonable inferences in plaintiff's favor.  Savory v. Lyons, 469 F.3d 667, 670 (7th Cir. 2006).

A.  Strict Responsibility Misrepresentation

The tort of strict responsibility misrepresentation, also known as "innocent misrepresentation," "arose from the judiciary's determination that in some situations, the accuracy of representations is so important that 'intent to deceive and good-faith belief in

9

the truth of the representation are immaterial.'" Van Lare v. Vogt, Inc., 2004 WI 110, ¶ 32, 274 Wis. 2d 631, 646, 683 N.W.2d 46, 55 (quoting Ollerman v. O'Rourke Co., 94 Wis. 2d 17, 25, 288 N.W.2d 95, 99 (1980)). The theory underlying the tort is that it is fairer to impose the loss flowing from certain types of unintentional misrepresentations on the "innocent" defendant rather than the "innocent" plaintiff. Van Lare, 2004 WI 110, ¶ 32; see also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Boeck, 127 Wis. 2d 127, 139-40, 377 N.W.2d 605, 611 (1985). A plaintiff asserting a claim of strict responsibility misrepresentation is required to show that the defendant made a false factual representation on the defendant's personal knowledge or under circumstances in which he or she should have known the truth or untruth of the statement, the plaintiff believed the representation to be true and relied on it to his or her detriment and the defendant had an economic interest in the transaction into which the plaintiff entered. Van Lare, 2004 WI 110, ¶ 32. In the present case, the parties disagree only about whether defendants had an economic interest in the transactions in which the Creamery entered. These transactions include the Creamery's decision to take on significant debt to finance its operations and expansions.

To establish the economic interest prong of a strict responsibility misrepresentation claim, the plaintiff must demonstrate that "defendant stood to make a financial gain" as the result of the plaintiff's participation in the transaction. Green Spring Farms v. Kersten, 136 Wis. 2d 304, 331 n.13, 401 N.W.2d 816, 827 (1987). The Wisconsin supreme court has

found that a defendant has an economic interest if he or she is a seller who makes an unintentional misrepresentation in connection with the sale of property or goods. E.g., Whipp v. Iverson, 43 Wis. 2d 166, 172, 168 N.W.2d 201, 204 (1969). In such a case, the seller has a clear interest in making a profit on the sale. Courts applying Wisconsin law have also found that an economic interest may exist when the defendant is a broker who will make a commission on the transaction he induces. E.g., Boeck, 127 Wis. 2d at 140 (commodities brokerage firm received financial benefit from trades it induced); Gauerke v. Rozga, 112 Wis. 2d 271, 280-81, 332 N.W.2d 804, 809 (1983) (real estate broker received commission from sale it induced); Schurmann v. Neau, 2001 WI App 4, ¶ 11, 240 Wis. 2d 719, 728, 624 N.W.2d 157, 162 (independent insurance agent benefited financially from selling policy to plaintiff); Grube v. Daun, 173 Wis. 2d 30, 55, 496 N.W.2d 106, 115 (Wis. App. 1992) (real estate broker received commission on sale it induced); Lewis v. Paul Revere Life Insurance Co., 80 F. Supp. 2d 978, 1001 (E.D. Wis. 2000) (broker received commission from sale of insurance policy).

In this case, plaintiff has not alleged that defendants had any economic interest that would support a strict responsibility misrepresentation claim. The only relevant allegation is that defendant Bremser was paid fees for its accounting services to the Creamery. However, the fees Bremser received were for ongoing accounting services. Although Bremser may have had an interest in maintaining its accounting contract with the Creamery, there

11

is no allegation that Bremser would enjoy a financial gain by inducing the Creamery to enter into a specific loan agreement or make a particular business decision. Unlike the cases cited above involving real estate or insurance brokers, plaintiff does not allege that Bremser received a bonus or commission beyond its regular fees by inducing the Creamery to choose a particular action. E.g., McCraw v. Mensch, 2006 WL 6047529, *4 (W.D. Wis. Nov. 22, 2006) (defendant had no economic interest for purposes of strict responsibility misrepresentation where his fees were not contingent on plaintiff entering into particular transactions); Grove Holding Corp. v. First Wisconsin National Bank of Sheboygan, 803 F. Supp. 1486, 1504 (E.D. Wis. 1992) (defendant accountant had no economic interest where plaintiff did not allege that the defendant would make a financial gain beyond his regular fees, such as a bonus or commission, if plaintiff entered into particular transactions). I conclude that plaintiff has failed to state a claim for strict responsibility misrepresentation.

## B.  Breach of Fiduciary Duty

A breach of fiduciary duty claim is subject to the statute of limitations for intentional torts, which is two years. Wis. Stat. § 893.57; see also Krier v. Vilione, 2009 WI 45, ¶ 58, 317 Wis. 2d 288, 323-24, 766 N.W.2d 517, 534. Defendants contend that any breach of fiduciary duty on their part would have had to occur by the end of 2005, when defendant Bremser stopped working for the Creamery. If the two-year limitations period began

12

running in 2005, plaintiff would have had to bring any fiduciary duty claim by the end of 2007, but it did not assert its breach of fiduciary duty claim against defendants until August 2009.  Plaintiff contends that the limitations period was tolled by the discovery rule.

Wisconsin applies the "discovery rule" to tort actions, including claims subject to § 893.57.  Splitler v. Dean, 148 Wis. 2d 630, 632, 436 N.W.2d 308, 308 (1989); Hansen v. A.H. Robins, Inc., 113 Wis. 2d 550, 560, 335 N.W.2d 578, 583 (1983).  Under this rule, "a cause of action will not accrue until the plaintiff discovers, or in the exercise of reasonable diligence should have discovered, not only the fact of injury but also that the injury was probably caused by the defendant's conduct or product."  Borello v. U.S. Oil Co., 130 Wis. 2d 397, 411, 388 N.W.2d 140, 146 (1986).

In its opposition brief, plaintiff contends that because defendant Bremser was engaged in a complicated fraudulent accounting scheme, the cause of the Creamery's injury was not readily apparent in 2005 or even 2007.  Thus, plaintiff argues, the statute of limitations has not run on the fiduciary breach claim.

In their reply brief, defendants contend that because the Creamery discovered discrepancies in its financial statements in March 2005, the Creamery would have discovered the cause of its injuries in 2005, had it exercised reasonable diligence.  Also, defendants contend that plaintiff filed suit against defendants in state court on April 6, 2007, asserting identical claims.  (It appears that in the state suit, plaintiff is asserting claims on its own

13

behalf, rather than as an assignee of Shullsburg Creamery's claims as it is doing in this case.) The state suit was filed more than two years before this suit. Thus, defendants argue, plaintiff cannot invoke the discovery rule.

Without further factual development of the record, I cannot determine whether the Creamery exercised reasonable diligence in discovering the cause of its injury. Plaintiff contends that defendants' fraud was not obvious, and even defendants argue that several people and economic circumstances caused the Creamery's downfall. Because facts are disputed, whether plaintiff exercised reasonable diligence is a question of fact for the fact-finder. John Doe 1 v. Archdiocese of Milwaukee, 2007 WI 95, ¶ 13, 303 Wis. 2d 34, 49, 734 N.W.2d 827, 833.

However, the existence of a 2007 state court action in which the plaintiff asserts identical claims is more problematic. If in fact plaintiff filed a state court suit more than two years before filing this suit in which it asserted the same claims and factual allegations as in this case, plaintiff may be barred from invoking the discovery rule. Ordinarily, I do not consider arguments that are raised for the first time in a reply brief. In this instance, however, the discovery rule was raised first by plaintiff in its opposition brief. Also, I see no reason to wait until summary judgment to determine whether plaintiff's fiduciary duty claim is barred by the statute of limitations. Thus, I will give plaintiff an opportunity to respond to defendants' argument regarding the state court suit and explain why its breach of fiduciary

14

duty claim is not barred by the two-year statute of limitations. If plaintiff does not submit a sur-reply, I will dismiss its fiduciary duty claim.

## ORDER

IT IS ORDERED that

1. The motion to dismiss, dkt. #6, filed by defendants Philadelphia Indemnity Insurance Co., Bremser, Schommer & McHugh, CPAs, LLC and Bremser Group, Inc. is GRANTED with respect to plaintiff American Trust & Savings Bank's strict responsibility claim.

2. Plaintiff may have until January 19, 2010 to file a sur-reply in which it explains why its breach of fiduciary duty claim should not be dismissed as untimely under Wis. Stat. § 893.57 despite the existence of a state court case that was filed more than two years before this case that asserts identical facts and claims against defendants.

Entered this 6th day of January, 2010.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge